Filed 11/15/24  In re F.D. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re F.D., <br><br> a Person Coming Under the Juvenile Court Law. | B330909 <br><br> (Los Angeles County  Super. Ct. No. 23CCJP00897) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> M.A., <br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nancy Ramirez, Judge.  Affirmed.

Benjamin Ekenes, by appointment of the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Mariela A. (mother) appeals from the juvenile court's dispositional order removing her son, Fabian D. (Fabian) from her custody.[1] She challenges one of the court's jurisdictional findings, contends the dispositional order was incomplete and unsupported by the evidence, and asserts that the Department of Children and Family Services (Department) has failed to comply with the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related state law.[2] We conclude mother's appeal from the jurisdictional finding is not justiciable, and her appeal of the dispositional order is forfeited. However, we agree that the Department has failed to comply with its obligations under ICWA. Therefore, we conditionally affirm.

## FACTS AND PROCEDURAL BACKGROUND

On March 14, 2023, the Department filed a dependency petition to establish jurisdiction over Fabian, who was then approximately 16 months old. The petition alleged that mother and Fabian's father, Nelson D. (father) had a history of engaging in violent physical altercations, that mother had failed to enforce restraining orders against father, and that father had been previously convicted for injuring mother. The petition also alleged that mother has a history of substance abuse.

---

[1]   We use his first name to preserve confidentiality. We intend no disrespect. Fabian's father is not a party to this appeal.

[2]   "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

I.      *Department Investigation*

Before opening the present case, the Department had received a prior referral related to Fabian.[3]  In October 2022, the Department received a report that father had attacked mother at the motel where they were both staying with Fabian.  Father was arrested for, charged with, and convicted of willful infliction of corporal injury under Penal Code section 273.5, subdivision (a).  He was sentenced to 180 days in jail.  The referral was closed based on the case worker's determination that mother's situation had stabilized.

In January 2023, the Department received a second referral indicating father had been released from jail in December 2022.  Mother had been seen intoxicated, arguing with father in Fabian's presence.

Upon receiving the second referral, the Department interviewed the case worker at the domestic violence shelter where mother was staying, the staff member at the shelter who had witnessed the incident, and mother.  The case worker reported that father had recently been released from jail.  A man had been seen pushing Fabian around the neighborhood in Fabian's stroller, and mother had been seen arguing with him.  When asked, mother told the case worker the man was father.  The staff member who saw the argument reported smelling alcohol on mother's breath at the time and observing that mother was intoxicated.  There was a restraining order protecting mother from father.

Mother said the man she had been seen with was not father, but someone else.  She said she previously identified him as father as a test, to

---

[3]     Fabian has three half-siblings, all of whom had been subjects of previous juvenile court proceedings.  The half-siblings were placed under the legal guardianship of their maternal grandmother.

3

see what the shelter staff would do.  Mother also said she did not want the restraining order, but that she had no contact with father.

II. *Court*

The Department filed its dependency petition in March 2023.  Three days later, the Department interviewed father, who denied seeing either mother or Fabian after his release from jail.

A. *Initial Hearing*

The juvenile court held its initial hearing on March 28, 2023.  At that hearing, mother and father gave the court the same mailing address.  Mother and father also denied Indian ancestry.  The court ordered Fabian removed from father and placed in the care of mother, on certain conditions.  Those conditions included that mother refrain from using drugs or consuming alcohol, that she cooperate with unannounced visits from the Department, that she keep the Department informed of her address and contact information, and that she abide by the terms of any existing criminal protective order.

B. *Subsequent Removal*

On May 2, 2023, the Department received a report that father and mother were staying at the same location with a friend of mother's, that he and mother were having verbal altercations, that he had tried to take the child, and the friend could not get father to leave.  The report also indicated mother was contemplating flight to Mexico with Fabian and father.  The reports were confirmed in a subsequent interview.

The Department made an unannounced visit to the home. Mother first denied father had been there, then later admitted he had. She said she was trying to protect both father and Fabian. Mother then went to stay elsewhere.

On May 9, 2023, the department applied for an initial order detaining Fabian from mother, which was granted. On the same day, the Department placed Fabian with his maternal aunt.

On May 12, 2023, the court heard an ex parte application, brought by the Department, seeking to have Fabian removed from mother. The court granted that application, finding father had been present with mother and Fabian and had also attempted to take Fabian.

### C.    *Jurisdiction/Disposition*

On May 16, 2023, the juvenile court made its jurisdictional findings and dispositional order. It sustained all counts in the petition, removed Fabian from the custody of both parents, directed that Fabian remain with his maternal aunt, and ordered reunification services for both parents. Mother timely appealed.[4]

### DISCUSSION

Mother briefly argues the allegation that she and father "have a history of engaging in violent physical altercations" should be stricken from the juvenile court's jurisdictional findings. However, her central contention is

---

[4]    Mother's request for judicial notice is denied. The records offered, consisting of a subsequent juvenile court order and notice of appeal from that order, are not relevant to the determination of this appeal. (See *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882.)

5

that the court's dispositional order removing Fabian from her custody was based on three errors.  First, she suggests the juvenile court improperly failed to consider whether there were reasonable alternatives to removal.  Second, mother argues the court's finding that she and father were "continuing to engage in violent altercations in the presence of the child," was not supported by substantial evidence.  Third, mother asserts it would be improper to remove Fabian based solely on violations of the criminal protective order.  Mother also requests that the Department be ordered to make a complete ICWA inquiry.

We conclude mother's request to strike a portion of the trial court's jurisdictional findings is not justiciable, and that mother has forfeited her challenges to the juvenile court's dispositional orders.  But we also conclude further ICWA inquiry is necessary.

I.    *Jurisdictional Findings*

The Department argues that mother's challenge to a single sentence of the trial court's jurisdictional findings is not justiciable, as she does not challenge the remaining findings.  Mother did not file a reply brief in response to this argument.  We agree with the Department.

A reviewing court generally need not consider a challenge to a single jurisdictional finding where other jurisdictional findings are not in question.  (See *In re B.H.* (2024) 103 Cal.App.5th 469, 480.)  However, "when a parent has demonstrated a specific legal or practical consequence that will be averted upon reversal . . . merits review is required." (*In re D.P.* (2023) 14 Cal.5th 266, 283.)  Otherwise, review is discretionary, based on case-specific factors.  (See *Id.* at pp. 285–287.)  No specific legal or practical consequence

6

has been identified here, nor has mother made any argument that discretionary review is appropriate.

Mother is not challenging any specific count in the petition. She is instead challenging a single sentence, included in two counts, which says she and father "have a history of engaging in violent physical altercations." She argues there can be no "history" of violent altercations because there was only one such incident. In this context, the presence of this one sentence has no legal or practical consequences a reversal would avoid.

The petition, in count a-1, alleges in full that mother and father "have a history of engaging in violent physical altercations. In October 2022, the mother and father engaged in a violent physical altercation. On 01/19/2023 and prior occasions, the mother failed to enforce and the father failed to comply with a restraining order protecting the mother from the father. On 11/01/2022, the father was criminally convicted of 273.5(a) PC Corporal Injury To Spouse. The violent conduct by the father against the mother endangers the child's physical health and safety, creates a detrimental home environment, and places the child at risk of serious physical harm, damage and danger."[5]

The first sentence, which mother seeks to strike, refers directly to the second sentence, which is unchallenged. The petition tells the court the parents have a "history," then it tells the court what that "history" is. Mother does not dispute that there was a violent altercation in October 2022,[6] nor

---

[5]     Count b-1 contains the same language, with an additional sentence alleging that "mother failed to protect the child in that the mother allowed the father to have unlimited access to the child."

[6]     As the Department's Detention Report describes it, while mother and father were "out . . . during the evening," father "grabbed [mother] by the hair, punching her in the face 3 times, causing profuse bleeding." The assault

does she dispute any of the other jurisdictional findings. In fact, during the jurisdictional portion of the hearing, mother's counsel conceded that "there may be some physical altercations that have occurred between the parents." Removing the first sentence would make no substantive change to the allegations of the petition and remove no basis for the court's jurisdiction. It would simply edit the Department's description of undisputed facts. We decline to do so.

## II. *Dispositional Order*

The Department argues mother forfeited any challenge to the dispositional order by submitting to it at the time of the hearing. The Department is correct.

A party forfeits their right to appeal a juvenile court's order if the party expressly submits to the Department's recommendation, and the court adopts that recommendation. (*In re N.S.* (2002) 97 Cal.App.4th 167, 170–171.) If the party only "submits on a particular report or record" the party "preserves the right to challenge the sufficiency of the evidence to support a particular legal conclusion." (*Id.* at p. 170.) In the dispositional phase of this proceeding, the court first asked if there were objections to the evidence. There were none. The court then asked if there were any objections to the Department's case plan. Mother's counsel responded, "Your Honor, at this time we will submit to the case plan."

---

continued when mother and father got home: "She told father she felt dizzy from blood loss. He told her to go take a shower. . . . He then entered the bathroom while she showered. He punched her once on the side of the head. She exited the bathroom. He pushed her to a bed. He placed her head faced down for three minutes. She could barely breathe. He then punched her three times on the back of the head." Only the intervention of neighbors caused the attack to cease.

While mother did object to the jurisdictional findings during an earlier portion of the hearing, Mother may not rely on those objections because they were not related to the arguments she makes now. (See *In re Daniel B.* (2014) 231 Cal.App.4th 663, 672.) As already noted, mother's jurisdictional argument conceded there had been multiple violent altercations between the parents; she focused instead on whether that posed any present danger to Fabian. When mother conceded the history of violent altercations and submitted to the case plan, she forfeited her right to challenge the court's findings on those subjects.

III.  *ICWA*

ICWA exists "to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court . . . must follow before removing an Indian child from his or her family." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 881, disapproved on an unrelated ground by *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152, fn. 18.) ICWA defines "Indian child" to mean any unmarried person who is under 18 and is either (a) already a member of an Indian tribe or (b) both eligible for membership in an Indian tribe and the biological child of a member of a tribe. (25 U.S.C. § 1903(4).) California law adopts the ICWA definition. (Welf. & Inst. Code, § 224.1, subd. (a).)

Both the juvenile court and the Department have an ongoing duty to inquire whether a child qualifies under that definition. (*In re N.F.* (2023) 95 Cal.App.5th 170, 176.) The Department must inquire of "'the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect.'" (*Id.* at p. 177, quoting § 224.2, subd. (b).)

9

Mother argues the Department failed to interview any relatives of either parent. The Department concedes the error. Failure to comply with ICWA requires this court to remand the case with instructions to do so. (*In re Dezi C., supra,* 16 Cal.5th at p. 1125.)

## DISPOSITION

The juvenile court's findings and order are conditionally affirmed. The court is to order the Department to complete the required ICWA inquiry, supported by record documentation. If the court determines ICWA applies, it shall proceed in conformity with ICWA and related California law.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, J.

WE CONCUR:

CURREY, P. J.

MORI, J.

10